IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| TRUMP, INC. d/b/a ONYX HOUSTON, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| THE CITY OF HOUSTON, THE CITY OF HOUSTON POLICE DEPARTMENT, THE CITY OF HOUSTON FIRE DEPARTMENT, UNNAMED POLICE OFFICERS AND FIRE DEPARTMENT OFFICERS, in their individual and official capacities, | § § § § § § § § § | CIVIL ACTION NO. _____ |
| *Defendants.* | | |

### PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIVE RELIEF

Plaintiff Trump, Inc. d/b/a Onyx Houston ("Onyx Houston") files this Verified Original Petition and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief (the "Complaint") against the City of Houston, the City of Houston Police Department, the City of Houston Fire Department, and Unnamed Police and Fire Department Officers in their individual and official capacities.

### NATURE OF SUIT

1. This is an action for money damages, declaratory judgment, and injunctive relief brought pursuant to 42 U.S.C. § 1983 for violations of the First and Fourth Amendment protections against unconstitutional searches and seizures, as well as violating Plaintiff's Substantive Due Process rights and rights to free speech.

## PARTIES

2. Plaintiff Trump, Inc. d/b/a Onyx Houston is a Texas Corporation doing business in Harris County, Texas.

3. Defendant City of Houston is a municipality organized under the laws and the Constitution of Texas. It may be served through the City of Houston City Secretary, Pat J. Daniel, 900 Bagby Street, Room P101, Houston, Texas 77002.

4. Defendant City of Houston Police Department is an agency of the City of Houston.

5. Defendant City of Houston Fire Department is an agency of the City of Houston.

6. Defendants unnamed Houston Police Department Officers and Houston Fire Department Officers may be served wherever they may be found.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to the following statutory and common law claims:

   (a) Defendants' acts, omissions, and wrongful conduct are violations of the First and Fourth Amendments of the United States Constitution;

   (b) Defendants' acts, omissions, and wrongful conduct violate Plaintiff's civil rights and are actionable pursuant to 42 U.S.C. § 1983.

8. Under 28 U.S.C. § 1331, this Court has original jurisdiction over all civil matters arising under the laws of the United States.

9. Plaintiff is a business incorporated and doing business in Harris County and the State of Texas. The principal activities complained of occurred within or were originated from Harris County, Texas. Therefore, venue is proper in this Court.

## FACTS

10. On April 27, 2020, Governor Greg Abbott issued Executive Order GA 18 relating to the expanded reopening of services as part of the safe strategic plan to open Texas in response to the

COVID-19 disaster. That order provided that as of 12:01 AM on Friday May 1, 2020 certain "Reopened Services," would be allowed to operate even if they were not "Essential Services." (Exhibit A, Executive Order, p. 3).

11. Those Reopened Services include "dine-in restaurants for restaurants that operate at up to 25% of the total listed occupancy of the restaurant" but only "Restaurants that had less than 51% of their gross receipts from the sale of alcoholic beverages and are therefore not required to post the 51% sign required by Texas law as determined by the Texas Alcoholic Beverage Commission." In other words, traditional bars with a majority of their revenue generated from the sale of alcohol are not a "Reopened Service."

12. Plaintiff operates a restaurant and gentlemen's club on Bering Street in southwest central Houston. It is unique in that it has always generated less than 50% of its revenue from alcoholic beverage sales. It is not required to post the 51% sign described in Governor Abbott's order and required by the Texas Alcoholic Beverage Commission (the "Red Sign"). The "Red Sign," among other things, prohibits patrons from entering the premises with a firearm under all circumstances. In contrast, a business which has a liquor permit but generates less than 50% of its revenue from the sale of alcoholic beverages is required to post a sign providing "The unlicensed possession of a weapon on these premises is a felony with a maximum penalty of 10 years imprisonment and a fine not to exceed $10,000" (the "Blue Sign").

13. Onyx Houston generates less than 50% of its revenue from the sale of alcoholic beverages and is required to post the Blue Sign. Onyx Houston posts the Blue Sign on the wall in the lobby of Onyx Houston. (Exhibit B, Picture of Blue Sign Posted in Onyx Houston Lobby).

14. Pursuant to Governor Abbott's Order, Onyx Houston made plans and advertised that it would be opening at 12:01 AM on Friday May 1, 2020. (Exhibit C, Onyx Houston April 29,

2020 Advertisement). The advertisement stated that Onyx Houston would be opening as a "restaurant with entertainment" offering a select food menu, and that it will follow state guidelines and health recommendations of social distancing.

15. At 12:01 AM Friday May 1, 2020, Onyx Houston opened its doors to the public. Pursuant to Governor Abbott's Order, Onyx Houston followed all health protocols recommended by the Texas Department of State Health Services ("DSHS"). This included providing sanitation stations with hand sanitizer, requiring all employees and staff to wear approved masks, maintaining proper social distancing, and only allowing up to seventy five patrons, despite have a Fire Code capacity of nearly 400.[1]  Additionally, the Texas Health and Human Services checklist for restaurant customers was posted in several places throughout the business including on the exterior of the building, in the front entryway, the main floor, and the restrooms. (Exhibit D, THHS Restaurant Checklist). Dancers at Onyx Houston were not offering lap dances but were merely providing entertainment from a safe distance.

16. In all ways, Onyx Houston both qualified as a Reopened Service and complied with the requirements and recommendations of Governor Abbot's Order. Nonetheless, before Onyx Houston had been open even an hour, dozens of Houston Police Department Officers and Fire Department officials raided the business. Onyx management fully cooperated with law enforcement, turned off the music, and provided law enforcement with access to all applicable permits required for the Onyx Houston to be in business.

17. After threatening to shut Onyx down as quote "nonessential," but lacking a legal basis to do so, the officers informed the owner that the business could remain open so long as it operated using safe distancing and the other health protocols of the DSHS. This decision was made by the

---

[1] As it would turn out, there were never more than twenty patrons at Onyx Houston at any one time.

Houston Police Officers after about an hour and a half of investigation. Rather than leaving after that decision was made, the police and fire officials would not leave and instead loitered in the parking lot of Onyx from the hours of approximately 12:40 AM until 4:00 AM. The patrons of the establishment had to walk through crowds of police officers to get to the front door and more in the lobby:



(<u>Exhibit E</u>, Photograph of Officers in the Lobby). To say this had a chilling effect on would-be patrons is a gross understatement.

18. After approximately 3 hours of law enforcement occupation, Defendants had a change of heart and decided to shut the business down on threat of arresting the owner and charging him

with a Class B misdemeanor.  The law enforcement officers could not and did not specify what crime he allegedly committed, but did indicate arrests would result from continued operations.

19. The reality is, Onyx Houston is a Reopened Service within the plain language of Governor Abbott's Order, and it was operating lawfully when the Defendants threatened to arrest the owner and shut down the business if it continued operations. Onyx Houston has as much of a right to open as any other restaurant in the State of Texas and the Defendants' actions were completely unlawful.

## CAUSES OF ACTION

20. 42 U.S.C. § 1983 provides that a person who, acting under color of law, subjects or causes to be subjected any United States citizen to the deprivation of any rights, privileges, or immunities secured by the United States Constitution, shall be liable to the party injured in an action at law.

21. At all relevant times and regarding all relevant actions of the Defendants as alleged in this Complaint, the Defendants were acting in their official capacities, under color of state law, and pursuant to the official policies, practices and customs of the governmental agencies or entities which the Defendants respectively represent.

22. Defendants, acting under color of law, have subjected and caused Plaintiffs to be subjected to the deprivation of its rights, privileges, or immunities as secured by the First, Fourth and Fourteenth Amendments.

23. Specifically, Defendants have violated Plaintiffs' civil rights by intimidating its patrons and employees, by shutting down the business without legal basis, and by threatening its representatives with arrest unlawfully and without authority.

**Violation of the First Amendment**

24. The First Amendment guarantees the right to free expression and association. U.S. CONST. AMEND. I.

25. The business offers protected expression, *i.e.*, erotic dancing. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Implicit in the right to engage in First Amendment-protected activities is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

26. "When public officials are given the power to deny use of a forum in advance of actual expression … the danger of prior restraints exists." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004). Expression loses its meaning with no audience. Deterring and limiting patrons' right of access to protected expression naturally and necessarily impinges upon the rights of those performing the protected expression and those seeking to engage in such communicative activities. *Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383, 392-94 (1988) (observing that vendors of adult entertainment have standing to assert First Amendment rights of their patrons generally).

27. The pervasive presence of uniformed officers and patrol vehicles on the business's property, in full view of patrons and others, operates to send a clear message that their mere presence at the business will subject them to temporary detentions, police investigation, and potentially criminal prosecution. *See, e.g., Bee See Books, Inc. v. Leary*, 291 F.Supp. 622 (S.D.N.Y.1968).

**Violation of the Fourth Amendment**

28. The Fourth Amendment guarantees that the people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Fourth Amendment guarantees to citizens the right to be free from arbitrary invasions at the unfettered discretion of officers in the field.

29. Onyx Houston further asserts Defendants' violations of the Fourth and Fourteenth Amendment on behalf of its patrons, guests, workers and visitors because special circumstances exist that preclude third-parties from effectively vindicating their rights. Onyx Houston has a sufficiently concrete interest in the outcome because it suffers economic injury through constriction of its market or function. The patrons or would be patrons of Onyx Houston who were faced with the chilling effect of having to walk through a crowd of dozens of armed law enforcement officers to reach the business suffered the deprivation of their rights. *See Powers v. Ohio*, 499 U.S. 400 (1991); *Craig v. Boren,* 429 U.S. 190 (1976) ("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function").

**Due Process**

30. Defendants' have no statutory basis (under the Texas Penal Code or otherwise) to threaten arrest of Onyx Houston representatives and employees or close the Onyx Houston's operations (pursuant to Governor Abbott's order or otherwise).

31. These actions are arbitrary, capricious, and shock the conscience. These actions are also procedurally deficient and an arbitrary taking and violate Plaintiffs' right to due process. U.S. CONST. AMEND. IV.

## DAMAGES

32. As a result of Defendants' actions, Onyx Houston has been damaged in an amount that exceeds this Court's minimal jurisdictional limit. Accordingly, Onyx Houston requests all actual damages resulting from, or proximately caused by Defendants' actions as described in this Complaint, including attorneys' fees incurred to mitigate damages caused by Defendants' actions. Onyx Houston also requests all consequential, out-of-pocket or reliance, lost profits, restitution, goodwill or business reputation, and loss-of-use damages. Onyx Houston also requests pre-judgment and post-judgment interest on any award of damages along with its costs of court.

## ATTORNEYS' FEES

33. Onyx Houston requests payment of its reasonable attorneys' fees and costs. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

## APPLICATION FOR INJUNCTIVE RELIEF

34. Onyx Houston seeks a temporary and permanent injunction order prohibiting Defendants as follows:

   a. Defendants are prohibited from arresting any employee or representative of Onyx Houston for conducting Operations;

   b. Defendants are prohibited from maintaining a physical presence at the Onyx Houston or within 400 meters of the Onyx premises for longer than thirty minutes unless investigating criminal activity with probable cause;

   c. Defendants are prohibited from closing or attempting to close Onyx under color of Governor Greg Abbott's Executive Order GA 18;

   d. Defendants shall produce all documents and communications relating to investigations of Onyx Houston from the time period of April 27, 2020 through May 15, 2020, and shall produce them five days before the hearing on Plaintiff's temporary injunction; and

    e. Defendants shall produce a privilege log and articulate the legal basis for any privilege they assert for all documents withheld from subsection d. above, and shall produce it five days before the hearing on Plaintiff's temporary injunction.

35. Onyx Houston is entitled to injunctive relief because it has (1) a substantial likelihood of success on the merits; (2) Defendants' conduct presents a substantial threat that it will suffer irreparable injury absent the injunction; (3) this threatened injury outweighs any harm the injunction might cause the Defendants; and (4) the injunction will not impair the public interest.

36. Absent an injunction, Plaintiffs will suffer irreparable injury. Businesses have a right to transact lawful business. The loss of constitutional freedoms for "even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

37. Monetary relief is insufficient as a matter of law because the harm Plaintiff will suffer between now and trial if not allowed to operate will result in the loss of business.

38. An injunction will not significantly burden any of the Defendants' interests because nothing in the injunction in any way inhibits Defendants' legal law enforcement function. Indeed, the public interest favors the issuance of injunctive relief to protect the constitutional rights at stake in this case.

## CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred.

## PRAYER

WHEREFORE, Onyx Houston respectfully request judgment be entered in their favor awarding;

    a. Monetary damages;

    b. Injunctive relief;

    c. Prejudgment and post-judgment interest as allowed by law;

    d. Attorneys' fees;

e. Expert fees;

f. Costs of suit; and

g. All other relief, in law and in equity, to which plaintiffs may be entitled.

Respectfully submitted,

*/s/ Casey T. Wallace*
Casey T. Wallace
State Bar No. 00795827
Federal I.D. No. 20117
Wallace & Allen, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Telephone: (713) 224-1744
Facsimile: (713) 227-0104
cwallace@wallaceallen.com

**LEAD COUNSEL FOR PLAINTIFFS**

**OF COUNSEL FOR PLAINTIFFS:**
Benjamin W. Allen
State Bar No. 24069288
Federal I.D. No. 1058996
William X. King
State Bar No. 24072496
Federal I.D. No. 1674134
Wallace & Allen, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Telephone: (713) 224-1744
Facsimile: (713) 227-0104
ballen@wallaceallen.com
wking@wallaceallen.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| TRUMP, INC. d/b/a ONYX HOUSTON, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| THE CITY OF HOUSTON, THE CITY OF HOUSTON POLICE DEPARTMENT, THE CITY OF HOUSTON FIRE DEPARTMENT, UNNAMED POLICE OFFICERS AND FIRE DEPARTMENT OFFICERS, in their individual and official capacities, | § § § § § § § § § | CIVIL ACTION NO. _____ |
| *Defendants.* | | |

## DECLARATION OF JOSHUA BROOKS

1. My name is Joshua Brooks. I am over the age of twenty-one (21) years and am fully competent to make this affidavit. All statements contained in this declaration are true and correct and are based on my personal knowledge.

2. I am an employee of Trump, Inc. d/b/a Onyx Houston. I have read the foregoing Petition and Application for Temporary and Permanent Injunctive Relief and every factual statement in it is true and correct.

3. I, Joshua Brooks, declare under penalty of perjury that the above is true and correct and based on my personal knowledge. I am executing this declaration within the territorial limits of the United States of America.

EXECUTED on May 1, 2020.

_____
Joshua Brooks